MARK CLIMSTEIN, MONA CLIMSTEIN
and MALARI MATTHES,

    Plaintiffs,                                      CASE NO. 07-11183

v.                                                  HONORABLE DENISE PAGE HOOD

MICHAEL CHURCH and TROOPER
WOLODKIN

    Defendants.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOCKET NO. 12] AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [DOCKET NO. 14]

**I.    INTRODUCTION**

This matter comes before the Court on Defendants Michigan State Troopers Michael Church and James Wolodkin's Motion for Summary Judgment [**Docket No. 12, filed January 18, 2008**] and Plaintiff's Cross-Motion for Summary Judgment [**Docket No. 14, filed January 25, 2008**].

This is a civil rights case under 42 U.S.C. § 1983, stemming from a warrantless search of Plaintiffs Mona Climstein and Mark Climstein's home. Defendants state troopers Michael Church and James Wolodkin are accused violating Plaintiffs' Fourth Amendment rights by conducting an unreasonable warrantless search of their home, 1610 Leroy Street, on February 1, 2006, as the officers had no reason to believe Andrew Matthes was in the house that day.

**II.    FACTS**

1

On February 1, 2006 Jackson County Friend of the Court Warrant Officers Holly Finco and Jacqueline Morris went to 1610 Leroy Street in Jackson Michigan to arrest Andrew Matthes with bench warrants for failure to make child support payments. (Def. Mot. Summary Judgment, Exhibit A, pp. 2-5.)  Mr. Matthes had, as recently as January 23, 2006, reported to the Jackson County Friend of the Court that he resided at 1610 Leroy Street. (*See* id.)  Mr. Matthes was unemployed, and disabled by a hernia that was scheduled for surgical repair on February 14, 2006.  There is dispute, however, as to whether the Defendant arresting officers were aware of the information concerning Andrew Matthes' medical condition at the time of the attempted arrest, or whether they learned of it after.

Friend of the Court records produced by Holly Finco showed Andrew Matthes' listed address as 1610 Leroy St. at various times both before and after February 1, 2006, including on a support order dated May 11, 2005 and a "PAYER INFORMATION AND EMPLOYER NOTIFICATION" form filled out by Mr. Matthes on May 16, 2005  (Def. Mot. Summary Judgment, Ex. 2, 3.)

Ms. Finco prepared a report of her involvement in the incident the afternoon of February 1, 2006, stating:

> Myself along with ofc Morris went to NCP's residence to attempt p/u.  Made contact with an unknown female at that residence who stated that she did not know if NCP was home.  When asked if we could come in and look she stated no that we needed a warrant to do that.  When we stated that we did in fact have several warrants for NCP she said that she would check the residence to see if NCP was home.  She came back to the door to inform us that her mother was on her way home and she wanted us to wait for her.  At that time we requested back up from MSP as they had arrested NCP in the past and they had been back at the residence last week looking for NCP.  NCPs/mother called back and requested to speak with us, at that time Ofc Morris spoke with mother and mother informed Ofc Morris that we had no right to be there and when informed we have every right as NCP has outstanding warrants.  Call was then terminated.  MSP did arrive and they also were told that that [sic] they could not search the residence.  NCP's mother did

appear and was very upset stating we had no right and she would contact her attorney. After a short discussion MSP officers enter the residence and search to no avail.
NOTE: NCP HAS 3 CIVIL WARRANTS AS WELL AS SEVERAL CRIMINAL WARRANTS.

(Def. Mot. Summary Judgment, Ex. B.)

On February 1, 2006 at approximately 9:25 am Defendant Church was contacted by a bench warrant officer from the Jackson County Friend of the Court, who was located on Leroy Street attempting to execute a warrant. Defendant Church responded to the scene and was advised by the Friend of the Court officers that they believed the subject was in the house and that the subject's mother was on the way to the house and very irate. (Def. Mot. Summary Judgment, Ex. B.)

Defendant Church knocked on the door of the house and Mr. Matthes' sister answered the door, refusing admittance. Defendant Church waited outside until Mr. Matthes' mother, Mrs. Climstein, came home and said the subject did not live there anymore, and informed the Defendant that he could not search the residence. Defendant Church explained his belief that there was probable cause that the subject was in the house, and proceeded to search the house. Defendant Church did not locate Mr. Matthes inside of 1610 Leroy Street.

Defendant Wolodkin, responding to Trooper Church's request for back up, also entered the house. The duration of the search is in dispute, lasting anywhere from 20 to 45 minutes, with no property within the house damaged.

## III. LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a

reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

## IV.     APPLICABLE LAW & ANALYSIS

Government officials are entitled to qualified immunity when performing discretionary functions as long as the conduct "does not violate clearly established statutory or constitutional

4

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L.Ed. 2d 396, 102 S. Ct. 2727 (1982). One asserting a violation of a "clearly established right" bears the burden to demonstrate that the contours of that right were sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 97. L.Ed. 2d 523, 107 S.Ct 3034 (1987).

   I.   **Reasonable Belief Mr. Matthes Lived on 1610 Leroy Street**

This first issue is whether the Defendants harbored a reasonable belief that Mr. Matthes lived on 1610 Leroy Street, or whether the residence is properly classified as a third party residence. Trooper Church cited the following in his report as establishing probable cause that Mr. Matthes lived in 1610 Leroy: the warrant listed the address as the subject's home; the Secretary of State listed that address as the subject's residence; the suspect telephoned the Court on the previous week and told them he lived at 1610 Leroy; Mr. Matthes had been arrested at that location in the autumn of 2005.

In *Payton v. New York,* the Supreme Court found that forced entries of suspects' residences without arrest warrants to be a violation of the Fourth Amendment. The Court also held that such entries would be permitted with an arrest warrant. *Payton v. New York*, 445 U.S. 573 (1980). The Court stated:

> ". . . for Fourth Amendment Purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."

*Id.* at 603.

*Payton* did not rule on whether an arrest warrant would provide the same authority to enter a third party's residence. *Steagald v. United States* holds that it does not. *Steagald v.*

5

*United States*, 451 U.S. 204 (1981) In *Steagald,* it was undisputed and clear that the officers knew they were entering a third party's dwelling. The agents in *Steagald* sought to do more than use an arrest warrant issued against Ricky Lyons to arrest him in a public place or in his home; instead, they relied on the warrant as legal authority to enter a married couple's home, based merely upon their belief that Ricky Lyons might be a guest there. *Id.* In this case, Trooper Church had probable cause to believe the search he was conducting was of Mr. Matthes' residence, despite his mother's assertions otherwise, as she may have simply been trying to protect her son.

In this case, the officers entered a residence to arrest a suspect pursuant to multiple arrest warrants where there was probable cause to believe that the residence being entered was in fact the residence of the subject of the arrest warrant.

## II. Evidence Not Sufficient to Show Reasonable Belief that Mr. Matthes Was Present at 1610 Leroy Street

The Defendants have not offered sufficient evidence to satisfy the second prong of the *Payton* test, specifically, why they believed Mr. Matthes was in the house. The FOC stated that they believed that Mr. Matthes was in the home, and the Defendants claim they knew that the Defendant was scheduled for a hernia operation, which would have limited his ability to stray from his home. Plaintiffs claim that Defendants learned of the hernia operation after they conducted their search. In either case, there is not enough evidence in the record for the Court to find as a matter of law that the officer had "reasonable belief" that the subject was in the home. No witnesses claimed to have seen Mr. Matthes in the house the day of the search, and simple knowledge of a medical condition that limits mobility is not enough to show that there existed a reasonable belief that Mr. Matthes was inside of 1610 Leroy Street on February 1, 2006. This is

a question of fact for the trier of fact to determine.

Mr. Matthes chose to list the residence as his home on several official documents, including his driver's license and with the Friend of the Court. It was reasonable for the officers to rely on his representations, and not believe his allegedly irate mother. However, while the Defendants had probable cause to believe that 1610 Leroy was Mr. Matthes' residence, the Defendants have not presented sufficient evidence to their reasonable belief that Mr. Matthes was home the day of the search. Simple bare assertions by FOC officers, and peripheral facts regarding Mr. Matthes' health are not sufficient to grant summary judgment for the Defendants.

Plaintiffs are similarly not entitled to summary judgment as there is at least a question of fact, taking the facts in the light most favorable to Defendants, concerning whether Defendants harbored a reasonable belief as to why they believed Mr. Matthes was home the day of the search.

**IV.    CONCLUSION**

Accordingly,

IT IS ORDERED that Defendants Michigan State Troopers Michael Church and James Wolodkin's Motion for Summary Judgment [**Docket No. 12, filed January 18, 2008**] is DENIED

IT IS FURTHER ORDERED that Plaintiffs' Cross-Motion for Summary Judgment [**Docket No. 14, filed January 25, 2008**] is DENIED.


                                                S/Denise Page Hood
                                                Denise Page Hood
                                                United States District Judge

Dated: August 8, 2008

  I hereby certify that a copy of the foregoing document was served upon counsel of record on August 8, 2008, by electronic and/or ordinary mail.

                S/William F. Lewis
                Case Manager